(No. 21839.—

DAYTON RITZMAN, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ERNBERTH ERICKSON *et al.* Defendants in Error.)

*Opinion filed June 22, 1933.*

PEREGRINE & BRUEGGER, (E. B. CRAVEN, of counsel,) for plaintiff in error.

ALEXANDER J. STROM, and HAROLD C. SEWELL, for defendants in error.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

Earl J. Erickson, son of Ernberth and Matilda Erickson, was accidently killed on June 27, 1931, while employed as a truck driver for the plaintiff in error, Dayton Ritzman. At the time of his death Earl was about twenty years of age, unmarried, and living at home with his parents on a small farm in Boone county. A claim for compensation was filed by the parents under the provisions of the Workmen's Compensation act on the ground that the parents were partially dependent upon their deceased son. The arbitrator found that the parents were not dependent upon the deceased and compensation was denied. On review the Industrial Commission reversed the arbitrator on a finding of dependency and awarded the minimum compensation of $1650. By statutory writ of *certiorari* the circuit court of Boone county reviewed the proceedings and confirmed the decision of the Industrial Commission. Upon leave granted the case comes here for review by writ of error.

It is not denied that Earl's death resulted from an injury arising out of and in the course of his employment, and the only issue presented is whether the parents were partially dependent upon his work and earnings.

At the time of Earl's death, and for several years prior thereto, Ernberth and Matilda Erickson lived on a forty-acre tract of relatively poor land, with improvements consisting of an old house, a tobacco barn and a granary. The farm was not mortgaged but Ernberth Erickson owed about $900 on personal indebtedness. He owned only about $50 worth of farm machinery and had livestock worth from $250 to $300. His main source of income was from tobacco-raising, and the average income from his farm was about $500 a year. Earl lived on the farm with his parents and for two years prior to his death had driven a truck for Dayton Ritzman in the summer months, hauling gravel. This work took his time, except on rainy days, for about five months, usually from the latter part of May to the latter part of October. For the remaining seven months of the year, excepting a few days when he worked for neighboring farmers, he stayed at home and did a large part of the farm work. The record shows that during the year prior to his death he dragged the land for the oats and sowed them and helped with the tobacco crop. The value of the services performed by him on the farm prior to his death was estimated to be worth $40 a month. Since his death his father, who is sixty-seven years old, has been compelled to hire extra help on the farm to take care of the tobacco. In addition to the care of the crops, the evidence further shows that Earl did other chores about the farm, occasionally taking small produce to market and helping with the housework and the washing when his mother was sick. The mother testified that he made occasional contributions of cash, estimated by her at $100, during the year prior to his death, and also purchased supplies, fencing, etc., with the money he earned while working for

Ritzman. The son also provided his own clothing and generally kept himself in spending money. If money was advanced to him by his parents he always paid it back. While working for Ritzman in the summer of 1930 Earl received $4.50 a day and during the period he worked in 1931 he received $3.50 a day. The testimony of the parents is somewhat confusing as to Earl's age, but in this respect the preponderance is in accord with the mother's testimony that he was twenty years old when he died and would have been twenty-one on October 14, 1931.

About three weeks after the son's death a man named Kurser, representing the employer, called at the Erickson home and obtained the signatures of Ernberth and Matilda Erickson and their married daughter, Mrs. Eva Miller, to a written statement. One paragraph of this statement, about which there is considerable dispute, recited that the parents had never asked their son for any money and that he had never contributed any money toward their support; that he did not make much and used all he earned for his own purpose; that he paid no board to his parents while he worked away from home and while at home he helped on the farm for his board, and that the parents the year before gave him some money which he needed. It appears from the evidence of the parents that Kurser prepared this statement and secured their signatures to it by giving them the impression that it was necessary for them to sign the paper in order to get a fair settlement from the insurance company on account of their son's death. Erickson testified that he had not read the statement but had signed it only because Kurser came there like a gentleman and said he was going to make a settlement but wanted him to sign his name to the paper so that the settlement could be promptly effected and the money secured. Another statement similar to the one signed by the parents and their daughter was crumpled up and thrown to the floor by Kurser but afterwards picked up by Mrs. Erickson and intro-

duced in evidence. It was substantially the same as the statement they had signed, excepting that no recitation was made in it that the parents had never received any money from their son for their support. Kurser was present at the hearing but did not testify whether he read the discarded statement to the parents or the one which they had signed.

Dependency is a present, existing relation between two persons where one is sustained by the other or relies on the aid of the other for his means of living. (*Chicago, Wilmington and Franklin Coal Co.* v. *Industrial Com.* 329 Ill. 494.) Whether there is partial dependency sufficient to sustain an award of compensation under paragraph (c) of section 7 of the Workmen's Compensation act is altogether a question of fact to be established by the applicants. (*L. M. & O. Motor Co.* v. *Industrial Com.* 335 Ill. 254.) Partial dependency may exist even if the evidence shows that the claimant could have subsisted without the contribution of the deceased employee. It is not necessary to show that the claimants would have been without the necessities of life or that they were without other means of support. (*Peterson* v. *Industrial Com.* 331 Ill. 254; *L. M. & O. Motor Co.* v. *Industrial Com. supra.*) The test is whether the contributions were relied upon by the applicants to aid and maintain them in their present position in life and whether they were to a substantial degree depending upon the support or aid of the employee at the time of the latter's death. *Bauer & Black* v. *Industrial Com.* 322 Ill. 165.

In this case the record clearly shows that Earl contributed in a substantial manner toward the partial support of his parents. His mother testified that "he worked for his board and paid me one dollar a day when he worked away;" that he bought groceries, meats, sugar and other provisions for the house and supplies and tools for the farm with his own money from time to time; that he gave his mother three dollars just a few days before he was killed and recently before then had given her five dollars; that she esti-

mated that during the previous year he had bought $50 worth of groceries for the family, had paid $15 for a radio and storage battery, had bought $10 worth of chicken wire, etc. In addition to these money contributions the evidence of both parents shows, without contradiction, that they depended upon Earl to help with their farm labor; that he helped to plant tobacco before leaving to work for Ritzman in the spring of 1931; that in the previous year he also helped in the same way, and after finishing his work for Ritzman in September or October of 1930 he helped his father with the tobacco harvest, tobacco stripping and other farm work throughout the fall and winter months and up to the time he began working for Ritzman in the spring of 1931. In view of this evidence it is apparent that Earl performed substantial services with consistent regularity on the farm and that from these services the parents received a substantial benefit. They received income from the tobacco and other farm products which his labor helped to produce and prepare for the market. This contribution of labor was just as substantial and as beneficial to his parents as if it had been a portion of wages paid by an employer as a reward for his labor and turned over to them in cash. His labor and services on the farm were relied upon by the parents, the father being sixty-seven years old and afflicted with rheumatism. In the absence of this help to his parents it would have been necessary preceding his death, as the record shows it was necessary following his death, for them to hire a man to aid them on the farm at two dollars per day. The labor so given by the son to his parents was the equivalent of money and answered the same purpose. A liberal construction of the act requires us to hold that such contributions, regularly made in the form of both money and services up to the time of the accident and for a reasonable period of time prior thereto, were sufficient to enable the applicants to recover on the ground of partial dependency.

As the award was for the minimum amount allowable in cases of this kind it is not necessary for us to determine the percentage of dependency. *Bauer & Black* v. *Industrial Com. supra.*

For the reasons above stated the judgment of the circuit court of Boone county sustaining the award of the Industrial Commission is affirmed.    *Judgment affirmed.*